**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-00742-MSK-MJW

**WILDEARTH GUARDIANS,**

      **Plaintiff,**

v.

**LAMAR UTILITIES BOARD d/b/a LAMAR LIGHT AND POWER; and
ARKANSAS RIVER POWER AUTHORITY,**

      **Defendants.**

---

**OPINION AND ORDER DENYING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 12)**, the Plaintiff's response **(# 13**, as supplemented **# 27)**, the Defendants' reply **(# 28)**, and the Plaintiff's sur-reply **(# 35)**.

## FACTS

Despite the wealth of detail in both the Plaintiff's Complaint **(# 1)** and the parties' briefs in this matter, the underlying facts may be concisely stated. The Defendants operate a coal-fired power plant ("the Plant") near Lamar, Colorado. The Plaintiff contends that since commencing operations in 2009, the Plant has repeatedly violated limits set by its operating permit with regard to various air pollutants. The Complaint asserts ten causes of action, all under the Clean Air Act, 42 U.S.C. § 7601 *et seq.*. Claims 1-5 assert that the Defendants have violated permit limitations for each of five specific pollutants, and claims 6-10 allege that the Defendants has failed to maintain consistent monitoring of emissions levels for each of the five pollutants.

The Plaintiff is not the only entity that has complained of violations at the Plant. In July 2010, the Colorado Department of Public Health and Environment ("CDPHE"), the state agency that oversees the Plant, issued a Compliance Advisory Letter, warning of various violations of permit conditions. The Defendants and CDPHE entered into discussions about the contentions in the letter, and in September 2010, they entered into a Consent Order that made certain findings of violations, included obligations on the Defendants to come into compliance with permit conditions (as to both emissions and monitoring), and to pay certain monetary penalties. The Defendants attempted to effectuate repairs and modifications that would bring the Plant into compliance, but were unable to effectively do so, and the Plant continued to operate in violation of permit conditions. In December 2010, the Defendants shut down the Plant.

While the Defendants undertook additional repairs and modifications to the plant, CDPHE notified the Defendants of supplemental violations that had occurred since the July 2010 Compliance Advisory Letter. In April 2011, shortly after the Plaintiff commenced this suit, the parties entered into a second Consent Order that again noted various violations. The Defendants and CDPHE agreed that the Defendants would be precluded from resuming operations – "other than for limited testing purposes" – until it could demonstrate that it would operate in compliance with its permit conditions.  Based on these facts, the Defendants filed the instant Motion to Dismiss **(# 12)**, arguing that action by the CDPHE essentially rendered the Plaintiff's claims moot, insofar as the Consent Orders would ensure that the Plant no longer operated in violation of its permit.

At the Plaintiff's request, briefing of the motion was delayed to permit the Plaintiff to conduct some additional discovery. In the meantime, the Defendants made additional

modifications to the Plant in an attempt to bring it into compliance. The Plant resumed operations in June 2011, ostensibly for "testing" purposes, and continued to operate at varying levels until November 2011. During that period of time, the Defendants were able to achieve certain reductions in some pollutant levels, but remained unable to achieve full compliance with the permit requirements. Thus, the Plant was again shut down in November 2011. It appears from the parties' statements that the Plant is not currently operating.

The question before the Court is whether the Plaintiff's suit has been rendered moot or it otherwise precluded from proceeding by virtue of the CDPHE's involvement in attempting to bring the Plant into compliance.

## ANALYSIS

### A. Standard of review

The Defendants' motion essentially seeks dismissal of the Plaintiff's suit on the grounds that the case has been rendered moot or otherwise outside of the Court's subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions generally take one of two forms: (i) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (ii) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, the Defendants' motions challenge the accuracy of the Plaintiff's allegations that the Clean Air Act will continue to be violated by operation of the Plant.

Where a Rule 12(b)(1) motion challenges the underlying facts of the case, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Sizova v. National Institute of Standards and Technology*, 282 F.3d 1320,1324 (10th Cir. 2002). But in this case, there are not any material factual disputes as to what has occurred to date; the parties disagree simply as to what inferences the Court should draw from those facts when attempting to ascertain whether violations will occur in the future. Accordingly, the Court sees no need to conduct an evidentiary hearing or to look beyond the record as established by the parties' evidentiary submissions.

### B. Mootness/preemption

The Plaintiff's claims are brought as a "citizen suit" under the Clean Air Act. 42 U.S.C. § 7604(a)(1). That statute provides that a private party may bring a civil suit on its own behalf against "any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an emission standard or limitation. . . ." In such suits, the courts are authorized to "enforce such an emission standard or limitation . . . and to apply any appropriate civil penalties" according to the factors set forth in 42 U.S.C. § 7413(e)(1). *Id.* The purpose of the citizen suit provision is to "aid enforcement of the Act while motivating governmental agencies charged with the responsibility to bring enforcement and abatement proceedings." *Metropolitan Washington Coalition for Clean Air v. District of Colombia*, 639 F.2d 802, 804 (D.C. Cir. 1981).

Simultaneously-proceeding citizen suits and state enforcement actions may come into conflict, as they have here. In such circumstances, the Act contemplates a certain preemption in favor of administrative agencies. 42 U.S.C. § 7604(b)(1)(B) provides that no citizen suit "may be commenced if the Administrator or State has commenced and is diligently prosecuting a civil

action in a court of the United States or a State to require compliance." However, courts interpreting this provision have uniformly held that "a civil action in court" means what it says – an action in a court – and preemption does not arise where a state agency is undertaking purely administrative enforcement efforts. *Texans United for a Safe Economy Education Fund v. Crown Central Petrol. Corp.*, 207 F.3d 789, 794-95 (5th Cir. 2000) *and cases cited therein*. Thus, CDPHE's administrative efforts to achieve the Defendants' compliance with the Act does not preempt the Plaintiff's suit here.

The Court then turns to the Defendants' argument that the administrative enforcement action has mooted the Plaintiff's claims. The crux of the Defendants' argument is that because of the Consent Orders, the Defendants will be unable to operate the Plant in violation of permit conditions in the future, and thus, no further violations will occur.

The Supreme Court addressed the mootness issue in a similar context in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000). There, during the pendency of a citizen suit under the Clean Water Act,[1] the defendant achieved substantial compliance with its discharge permit. It later shut down the facility and put it up for sale. As a result, the Court of Appeals dismissed the claims against the defendant as moot. On review, the Supreme Court reversed, explaining that "in determining whether a case has been mooted by a defendant's voluntary conduct, [mootness results] if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* The party asserting mootness bears "the heavy burden of persuading the court that the challenged conduct

---

[1] Because the Clean Air Act and Clean Water Act are similar in their mechanism of operation, courts routinely turn to cases decided under one when interpreting the other. *See e.g. Roosevelt Campobello Intern. Park Commn. v. U.S. E.P.A.*, 711 F.2d 431, 437 (1st Cir. 1983).

cannot reasonably be expected to start up again." *Id.* (Noting that "the effect of both Laidlaw's compliance and the facility closure on the prospect of future violations is a disputed factual matter," the Court remanded the action for further consideration of whether this strict standard was met. *Id.* at 193-94.)

The Defendants argue that *Laidlaw* is not controlling because that case involved analysis of whether "voluntary conduct" by a defendant moots an action, and here that shutdown of the Plant pending additional repairs and modifications is <u>involuntary,</u> warranting application of a different mootness standard. There is some authority for the proposition that, where compliance is obtained involuntarily – *e.g.* through an enforcement action – the standard for avoiding dismissal based on mootness requires the <u>plaintiff</u> to show that "there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the consent decree." *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2009). No authority from the 10th Circuit appears to have addressed any distinction between "voluntary" and "involuntary" conduct in this type of situation.

This Court is left with substantial doubt as to the wisdom or utility of attempting to differentiate between "voluntary" and "involuntary" compliance in cases such as these. Using *Laidlaw* as an example, compliance was described by the Supreme Court as "voluntary," but the filing of the citizen suit was preceded by a lawsuit[2] against Laidlaw initiated by the state agency charged with enforcing the Act. That lawsuit was resolved by a settlement agreement, one that presumably could have been enforced against Laidlaw by the agency upon future violations. *Id.*

---

[2]Admittedly, the lawsuit was a plainly collusive one that the courts ultimately determined was not "diligently prosecuted" and was induced solely in an attempt to preempt the threatened citizen suit. 528 U.S. at 176-77.

at 176-77. Thus, one could very easily describe Laidlaw's subsequent compliance as having been compelled, involuntarily, by the state enforcement action.[3] In the common situation presented here, a defendant allegedly is in violation of permit requirements when a regulatory legal proceeding – whether administrative or in court – is commenced, but the defendant reforms its behavior afterwards, characterizing the defendant's actions as "voluntary" seems inapt, since they were in response to enforcement efforts. But characterizing the defendant's actions as "involuntary" also seems inappropriate because it fails to recognize the defendant's choice to reform. The distinction between "voluntary" compliance and "involuntary" compliance becomes even murkier when the defendant and regulator enter into a mutually agreed "consent decree" that embodies a "voluntary" choice (by the polluter) with the potential of "involuntary" enforcement (by the state). Thus, the distinction between "voluntary" and "involuntary" compliance is difficult to draw. In addition, the primary significance of the distinction is the assignment of the burden of persuasion on a single issue - whether the violations are likely to continue.

Fortunately, in the context of this case, it is not necessary to resolve the fine distinctions between voluntary or involuntary compliance, or to assign the burden of persuasion. The Defendants initially sought dismissal of this action on mootness grounds on the strength of the September 2010 Consent Order, but, as the ensuing events of June - November 2011 make clear, that Consent Order was ineffective in ensuring that the Plant would not exceed permit

---

[3]Notably, the Supreme Court description of the compliance in *Laidlaw* as "voluntary" was not the result of any particular discussion of the voluntary/involuntary question. Indeed, there is no indication that the Supreme Court believed or intended that the adjective it chose to describe Laidlaw's repentance was intended to have any particular significance.

limitations. Presumably, the Defendants now contend that the April 2011 Consent Order also ensures the Defendants' future compliance with permit conditions, but they offer no meaningful explanation as to why, when the September 2010 Consent Order was ineffective, the April 2011 Order will suffice. Indeed, pursuant to the April 2011 Order, the Defendants can engage in the very same "testing" that was conducted from June - November 2011 that caused violations of permit conditions. Thus, the Court can see nothing in the Consent Orders, individually or in concert, that gives any assurance that the Plant will not operate (for "testing" or otherwise) in violation of permit conditions in the future. Moreover, the Court notes nothing in the record that indicates that the system(s) responsible for prior permit violations has been corrected such that the Defendants can say with some assurance that the Plant can resume operations in accordance with the permit's restrictions.[4]

Accordingly, the Court finds that, upon this record, if the Plant is reactivated, without evidence of appropriate corrections/modifications, it is likely to operate in violation of the permit conditions in the same way that it did from June - November 2011. Thus, there is a "realistic prospect" that violations will continue. Even if the burden is on the Plaintiff to demonstrate that the enforcement proceedings have not rendered the case moot, they have done so.

---

[4] Indeed, it would appear to the Court that the Defendants' motion may be premature. Unless and until the Defendants can state with confidence that the Plant has been repaired such that its operation will achieve compliance, this Court is left with only the Defendants' speculation that unidentified fixes in the future will allow them to comply with their obligations under the Consent Orders. Upon a record that showed that the Plant had indeed been repaired, completed testing, and resumed operations for a meaningful period of time with no or merely *de minimis* permit violations, a claim of mootness might very well lie. *See e.g. Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 637 F.Supp.2d 983, 986 (N.D.Al. 2009) (mootness found where, since defendant entered into consent decree and resumed operations, only one "relatively innocuous" violation occurred).

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (**# 12**) is **DENIED**.

Dated this 29th day of March, 2012

                                    **BY THE COURT:**

                                    Marcia S. Krieger
                                    United States District Judge